## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **CRYSTAL R. GREENWOOD,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 3:17-CV-0122-D-BK** |
| **NANCY A. BERRYHILL,** | § | |
| **Acting Commissioner of Social** | § | |
| **Security Administration,** | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 18, this case has been referred to the undersigned magistrate judge for findings of fact and recommended dispositions of the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 15, should be **DENIED**, Defendant's *Motion for Summary Judgment*, as construed from her response brief, Doc. 16,[1] should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

## I. BACKGROUND

### A.    Procedural History

Plaintiff Crystal R. Greenwood seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits (DIB), and supplemental security income (SSI) under the Social Security Act ("the Act"). Doc. 15 at 3. In November

---

[1] Defendant's counsel failed to comply with the Court's Order, Doc. 14, which required Defendant to file a cross-motion for summary judgment within 30 days of Plaintiff filing her summary judgment motion. Going forward, the undersigned will consider striking any pleading not in compliance with the Court's Order and the Local Civil Rules. *See* N.D. TEX. LOCAL R. 9.1(a) (providing that, unless otherwise directed by the presiding judge, social security cases are to be determined on cross-motions for summary judgment).

2013, Plaintiff filed for benefits, claiming that she became disabled in June 2012, due to lupus and aplastic anemia. Doc. 13-6 at 2, 9; Doc. 13-7 at 2, 6. Plaintiff later amended her disability onset date to November 4, 2013. Doc. 13-3 at 42. Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 13-3 at 2, 10-21.

**B.    Factual Background**

Plaintiff was 31 years old on her claimed disability onset date. Doc. 13-3 at 42; Doc. 13-6 at 2. She is a college graduate and has past relevant work experience as a store manager, operations manager, loan manager, and front desk associate. Doc. 13-7 at 7.

In November 2013, Dr. Stephanie Menes, M.D., began treating Plaintiff for reflux, arthritis and asthma. Doc. 13-8 at 3-5, 40; Doc. 13-12 at 17. In February 2014, Dr. Menes referred Plaintiff to Dr. Shadan Mansoor, M.D., for her anemia. Doc. 13-8 at 45. Dr. Mansoor subsequently found that Plaintiff's white blood cell count and platelet count did "not suggest aplastic anemia," but nevertheless ordered that she undergo intravenous iron therapy, which consisted of two weekly infusions and was completed in February 2014. Doc. 13-8 at 47, 62. At several follow-up appointments, Dr. Mansoor noted that the results of Plaintiff's blood tests were "completely normal," and that he explained to Plaintiff that there was no evidence she suffered from aplastic anemia and, instead, her iron deficiency was due to heavy menstrual periods. Doc. 13-9 at 5, 8, 12. In September 2014, Dr. Mansoor ordered another round of intravenous iron infusion therapy. Doc. 13-9 at 5. The therapy consisted of four weekly infusions and was completed in October 2014. Doc. 13-16 at 9.

Between June and November 2014, Plaintiff complained to Dr. Menes of, *inter alia*, bilateral leg pain related to her lupus. *See* Doc. 13-12 at 7, 9, 12, 15; Doc. 13-13 at 25, 28. At

each visit (1) Plaintiff reported difficulty walking but noted that her leg pain was relieved by medication; (2) Dr. Menes observed that Plaintiff had an antalgic gait and used a cane for ambulation; and (3) Plaintiff was found to have 5/5 strength in her lower extremities, described as "[v]ery active, not couch potato," and advised to "[e]xercise 2-3 times/week."  Doc. 13-12 at 7-9, 10-12, 14-17; Doc. 13-13 at 25-27, 28-30.

In December 2014, a hearing was held before an administrative law judge ("ALJ").  *See* Doc. 13-3 at 28-45.  Plaintiff testified that, since 1992, she had received intravenous iron infusion therapy "every two to three months."  Doc. 13-3 at 36-37.  She testified that each round of therapy consisted of four weekly infusions, lasting between four and six hours each.  Doc. 13-3 at 36.  Plaintiff averred that, per Dr. Menes' recommendation, she uses a cane "to help walk" and to assuage her fear of falling.  However, she admitted the cane was not prescribed by a doctor.  Doc. 13-3 at 40.

Subsequently, in February 2015, Plaintiff was examined by Dr. M. Iqbal Mughal, M.D., at the request of Disability Determination Services.  *See* Doc. 13-16 at 37-50.  Dr. Mughal noted that Plaintiff walked with a cane and limped without one, and found that she exhibited "global weakness around 3/5."  Doc. 13-16 at 39-40.  Dr. Mughal further noted that Plaintiff's lupus "appear[ed] to be in remission" and that, based on her blood test results, Plaintiff's "[h]istory of anemia . . . sounds more like iron deficiency anemia secondary to menorrhagia rather than aplastic anemia."  Doc. 13-16 at 40.  He also completed a Medical Source Statement regarding Plaintiff's ability to perform physical work-related activities.  *See* Doc. 13-16 at 45-50.  He opined that Plaintiff could occasionally lift up to twenty pounds and carry up to ten pounds, and, in an 8-hour work day, sit for six hours, stand for three hours, and walk for one hour.  Doc. 13-16 at 45-46.  Dr. Mughal further determined that Plaintiff's use of a cane was medically necessary,

but that she could walk "1/4 of a block" without it, and that she could never stoop or "walk a block at a reasonable pace on rough or uneven surfaces." Doc. 13-16 at 46, 48, 50.

## C.    The ALJ's Findings

In June 2015, the ALJ denied Plaintiff's application for benefits. Doc. 13-3 at 10. The ALJ found that Plaintiff had not performed substantial gainful activity since the disability onset date, and had the severe impairments of systemic lupus erythematosus, microcytic hypochromic anemia, iron deficiency anemia, and obesity. Doc. 13-3 at 15. The ALJ found that none of Plaintiff's impairments met or equaled a listed impairment, however. Doc. 13-3 at 16. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work on a sustained basis and, thus, could return to her past relevant work as a loan manager. Doc. 13-3 at 16; Doc. 13-3 at 21-22. Accordingly, the ALJ concluded that Plaintiff was not disabled. Doc. 13-3 at 22.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors

including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the

5

movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

### III. ARGUMENT AND ANALYSIS

A.    **Intravenous Iron Infusion Therapy**

Plaintiff argues that the ALJ erred by failing to evaluate whether her receipt of intravenous iron infusion therapy prevents her from maintaining employment. Doc. 15 at 7. In response, Defendant argues that Plaintiff's receipt of infusion therapy is not disabling because she was able to work until 2012, despite testifying that she had received infusion therapy since 1992. Doc. 16 at 5. Defendant also contends that Plaintiff failed to meet her burden of proving that the iron infusions prevented her from performing the job of loan manager. Doc. 16 at 5.

The ALJ properly considered the disruptive effects of Plaintiff's intravenous iron infusion therapy. At the hearing, after Plaintiff testified to undergoing infusion therapy, her attorney inquired into the frequency with which she received these infusions – asking how many sessions she has undergone since June 2012, the time between each session, and why, despite the fact that she has been anemic since the age of ten, it now prevented her from working. *See* Doc. 13-3 at 37-39. The ALJ's written opinion reflects his consideration of this testimony. In finding that Plaintiff's infusion therapy was not so disruptive as to prevent her from working, the ALJ emphasized that, despite testifying to receiving infusions every two to three months, the medical evidence of record shows that Plaintiff has only twice undergone a course of infusion therapy since her onset of disability date, and that her condition had improved with treatment. Doc. 13-3 at 19. Plaintiff also failed to argue or reference any evidence in support of her claim that the

receipt of infusion therapy is so disruptive that it prevents her from maintaining employment.
*Leggett*, 67 F.3d at 564 (the burden lies with the plaintiff to prove disability under the first four steps).  Because the ALJ appropriately considered Plaintiff's history of receiving iron infusion therapy and clearly evaluated whether it would prevent her from maintaining employment, the Court concludes that the ALJ's implicit finding that Plaintiff's receipt of infusion therapy is not disabling, as defined by the Act, is supported by substantial evidence.

**B.    Use of a Cane**

Next, Plaintiff argues that the ALJ erred in failing to evaluate whether Plaintiff's use of a cane would interfere with her ability to work as a loan manager.  Doc. 15 at 7-8.  In response, Defendant contends that the ALJ's decision shows that he specifically considered whether Plaintiff required a cane.  Doc. 16 at 5-6.  Defendant also notes that Dr. Mughal, who found that a cane was medically necessary, still determined that Plaintiff could meet the physical demands of sedentary work.  Doc. 16 at 6.

In support of her argument, Plaintiff relies on Dr. Menes' observations on five occasions of Plaintiff limping and using a cane, and Dr. Mughal's observation of the same during his consultative examination.  *See* Doc. 15 at 7-8 (citing Doc. 13-12 at 7-8, 11, 15-16; Doc. 13-13 at 26, 29; Doc. 13-16 at 38-39).  However, even Dr. Mughal, the only doctor to indicate that Plaintiff's use of the cane was medically necessary, did not conclude that its use would prevent her from working.  Doc. 13-16 at 45-46.  So, even if the ALJ mistakenly failed to mention Dr. Mughal's post-hearing finding that Plaintiff's use of a cane was medically necessary, it does not impact the finding of no disability, which nevertheless is supported by substantial evidence.

Assuming *arguendo* the ALJ erred in not accounting for Plaintiff's use of a cane in his RFC, such error is harmless.  *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 1988) (holding

that an ALJ's omission does not require remand unless it affects the claimant's substantial rights). First, Dr. Mughal, while finding Plaintiff's use of a cane medically necessary but noting that she could walk 1/4 of a block without it, also determined that Plaintiff could occasionally lift 20 pounds and carry ten pounds, and, in an eight-hour workday, sit for six hours, stand for three hours, and walk for one hour. Doc. 13-16 at 45-46. This level of activity is within the physical requirements of sedentary work, which generally involves lifting no more than ten pounds at a time, standing and walking no more than two hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-6P, 1996 WL 374185, at *3.

Second, Plaintiff fails to explain how her use of a cane is more limiting than the ALJ determined, or, more specifically, how her use of a cane prevents her from performing her past work as a loan manager. *Leggett*, 67 F.3d at 564; *see Dismuke v. Colvin*, No. 14-CV-1175-M, 2015 WL 464397, at *6 (N.D. Tex. Jan. 8, 2015) (Horan, J.) (no reversible error where the plaintiff alleged that the ALJ failed to consider his use of cane in formulating his RFC, yet failed to "articulate any additional limitations attributable to use of the cane that he contends the ALJ should have included in the RFC assessment"), *adopted by* 2015 WL 481384 (N.D. Tex. Feb. 4, 2015) (Lynn, J.); *Tubbs v. Colvin*, No. 14-137-SDD-SCR, 2015 WL 9672914, at *5 (M.D. La. Dec. 7, 2015) ("Plaintiff did not cite to any evidence or authority that the need to use a cane would further restrict his RFC, or that the jobs identified by [the vocational expert] would be precluded if an individual used or was medically prescribed to use a cane."). Accordingly, remand is not warranted on this ground.

C.      **Postural and Ambulatory Limitations**

In his Medical Source Statement, Dr. Mughal found that Plaintiff can never stoop and lacks the ability to "walk a block at a reasonable pace on rough or uneven surfaces." Doc. 13-16 at 48, 50. Based on that finding, Plaintiff argues that the ALJ erred in failing to explain how Plaintiff's inability to stoop would not adversely affect her ability to perform the job of loan manager. Doc. 15 at 8. Plaintiff also argues that Dr. Mughal's finding regarding her inability to walk at a reasonable pace on rough or uneven surfaces equates to a finding that she lacks the ability to ambulate effectively and is therefore disabled under Listing 1.00(B)(2)(b). Doc. 15 at 9. Defendant counters that Plaintiff has identified no evidence showing that her job as a loan manager requires an ability to stoop or to walk on rough or uneven surfaces. Doc. 16 at 6-7.

**1. Plaintiff's Ability to Stoop**

Plaintiff's argument regarding her inability to stoop, Doc. 15 at 8, is premised on Social Security Ruling ("SSR") 96-9P, which states that because an ability to occasionally stoop "is required in most unskilled sedentary occupations[,] . . . [a] *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply . . . ." SSR 96-9P, 1996 WL 374185, at *8 (emphasis in original). However, as Plaintiff concedes, her job as a loan manager is considered "skilled." Doc. 17 at 4 n.1. In light of that, an inability to stoop did not require a finding that she is disabled. *See, e.g.*, *Banks v. Colvin*, No. 13-189-JJB-RLB, 2014 WL 4660847, at *11 (M.D. La. Sept. 17, 2014) (finding that SSR 96-9P did not require the ALJ to find the claimant disabled where, although he was unable to stoop, he was capable of performing *semi-skilled* sedentary work); *Heard v. Barnhart*, 110 F. App'x 88, 91 (10th Cir. 2004) ("Social Security Ruling 96-9p would not

require the ALJ to find Heard to be disabled even if he could not stoop [because] the ALJ found that Heard could perform both unskilled *and semi-skilled* sedentary labor.") (emphasis added).

Moreover, even if the ALJ's failure to include stooping limitations in Plaintiff's RFC was error, it was harmless, as Plaintiff has neither argued that her job as a loan manager required any stooping nor pointed to any evidence from which such a finding can be made. *Audler*, 501 F.3d at 448; *Leggett*, 67 F.3d at 564; *cf. Klaus v. Colvin*, No. 15-CV-0593-Y-BL, 2016 WL 4573878, at *13 (N.D. Tex. Aug. 4, 2016) (Frost, J.) (finding that even if the ALJ erred in not including postural limitations in his RFC determination, it was harmless where the work plaintiff was found capable of performing did not require activities affected by the postural limitations), *adopted by* 2016 WL 4539179 (N.D. Tex. Aug. 31, 2016) (Means, J.). Thus, remand is not warranted on this ground.

### 2. Plaintiff's Ability to Ambulate Effectively

At step three, the ALJ concluded, without mention of Listing 1.00(B), that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Doc. 13-3 at 16. The Court of Appeals for the Fifth Circuit has found that conclusory step three determinations that lack "any explanation as to how [the ALJ] reached the conclusion that the [the claimant's] symptoms are insufficiently severe to meet any listed impairment" are beyond meaningful judicial review.[2] *Audler*, 501 F.3d at 448; *see also* 42 U.S.C. § 405(b)(1) (stating that in making a disability determination, the Commissioner must, *inter alia*, state his or her

---

[2] In *Audler*, the ALJ simply stated that "[t]he medical evidence indicates that the claimant has status post lumbar laminectomy cervical disc herniation, headaches and chronic neck and back pain, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." *Audler*, 501 F.3d at 448.

determination "and the reason or reasons upon which it is based"). Here, although the ALJ failed to explicitly state why Plaintiff's impairment did not meet Listing 1.00(B), the Court must determine whether any error resulting from this omission was harmless. *Audler*, 501 F.3d at 448. "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam) (citation and internal quotation marks omitted).

Listing 1.00(B)(2)(b) defines an "inability to ambulate effectively" as "an extreme limitation of the ability to walk," i.e., an impairment that "interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b)(1). An example of ineffective ambulation includes "the inability to walk a block at a reasonable pace on rough or uneven surfaces." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b)(2). Furthermore, to qualify under Listing 1.00(B)(2)(b), the "inability to ambulate effectively . . . must have lasted, or be expected to last, for at least 12 months." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00(B)(2)(a). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original); *see also Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (describing medical listing criteria as "demanding and stringent").

Plaintiff points to Dr. Mughal's Medical Source Statement as evidence that she lacks the ability to walk a block at a reasonable pace on rough or uneven surfaces, and thus lacks the ability to ambulate effectively. However, Plaintiff fails to even argue, let alone identify any evidence, that she would be required to ambulate across such surfaces in her capacity as a loan manager. Consequently, there is no basis to conclude that such impairment, if it exists, "interferes very seriously with the [Plaintiff's] ability to independently initiate, sustain, or

complete activities," 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b)(1), specifically, those of a loan manager.

Finally, Plaintiff's medical records belie her claim that her purported inability to ambulate effectively lasted or can be expected to last twelve months. As noted earlier, numerous physical examinations occurring after Plaintiff's claimed onset date and prior to Dr. Mughal's examination showed that Plaintiff exhibited a normal gait. During all but one of the examinations in which Plaintiff was found to have an antalgic or limping gait, she was still found to have 5/5 strength in her lower extremities, stated that medication relieved the pain in her legs, was described as "[v]ery active, not couch potato," and was advised to "[e]xercise 2-3 times/week." Doc. 13-12 at 7-9, 10-11, 12-14, 15-17; Doc. 13-13 at 25-27, 28-30.

Accordingly, Plaintiff has failed to show that she was prejudiced by the ALJ's error. *Brock*, 84 F.3d at 728, and, therefore, reversal is not warranted on this ground.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 15, should be **DENIED**, Defendant's *Motion for Summary Judgment*, as construed from her response brief, Doc. 16, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on March 8, 2018.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE